**TRANSCRIBED FROM DIGITAL RECORDING**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWIN DAVILA, | ) |
| | ) Case No. 23 C 1739 |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| REYNALDO GUEVARA, et al., | ) Chicago, Illinois |
| | ) February 26, 2026 |
| Defendants. | ) 10:03 A.M. |

TRANSCRIPT OF PROCEEDINGS - In-person Motion
BEFORE THE HONORABLE MARIA VALDEZ, Magistrate Judge

APPEARANCES:

For the Plaintiff: LOEVY & LOEVY
311 North Aberdeen Street
3rd Floor
Chicago, Illinois 60607
BY: MS. ANNIE DAVEY PROSSNITZ

For Defendant City: ROCK FUSCO & CONNELLY LLC
333 West Wacker Drive
19th Floor
Chicago, Illinois 60606
BY: MS. CATHERINE MACNEIL BARBER

PAMELA S. WARREN, CSR, RPR
Official Court Reporter - Retired
23869 N. High Ridge Drive
Lake Zurich, Illinois 60047
312.823.0001

NOTE: Please notify of correct speaker identification.

(Proceedings held in open court:)

THE CLERK: 23 C 1739, Davila versus Guevara, et al., motion hearing.

THE COURT: State appearances, please.

MS. BARBER: Catherine Barber for defendant City of Chicago.

MS. PROSSNITZ: Good morning, your Honor. Annie Prossnitz on behalf of plaintiff Edwin Davila.

THE COURT: Good morning to you both. We are here on plaintiff's motion to compel, and the Court has received the motion and the defendants's response in opposition to the motion.

Do you want to reply to their argument?

MS. PROSSNITZ: Yes, your Honor. I would just briefly summarize what's at issue in this dispute today. Plaintiff has produced all closed homicide files that we'll be relying on for Monell discovery from the years of 1991 to 1995, which is the relevant time frame in this case. And essentially we are content to rely on that set of files for our universe of Monell discovery if the city had been willing to agree to the stipulation that they would not seek to bar our experts based on not producing open homicide files. The city has not agreed to that stipulation, and so we are asking the Court to order the city to produce all open homicide files from 1991 to 1995.

And given that this issue has just been decided in

another case of ours, Lugo versus Guevara, in which the file -- these open homicide files are being ordered to be produced from 1987 to 1991, the time frame is actually even smaller here. So our years that we would be seeking to produce from the city are 1992 to 1995.

THE COURT: Remind me, who ordered you to -- in Lugo, who is -- which judge?

MS. PROSSNITZ: That was Judge Appenteng.

THE COURT: Okay. All right. Anything else?

MS. PROSSNITZ: No, your Honor. That is the central dispute.

THE COURT: So the open files do not appear to be what your expert will be relying upon; is that correct?

MS. PROSSNITZ: They will be part of our expert's analysis, yes.

THE COURT: Has your expert done such an analysis in a similar type of case?

MS. PROSSNITZ: Yes, your Honor.

THE COURT: And has relied on the open files in his or her analysis?

MS. PROSSNITZ: Yes, exactly.

THE COURT: Has testified on that?

MS. PROSSNITZ: Yes, your Honor.

THE COURT: Okay.

Go ahead.

MS. BARBER: Yes, your Honor. So not specifically as to open versus closed, just so there are other cases where only closed files were produced and the expert did the exact same analysis. So it didn't make any distinction between open and closed.

So that -- and from the city's perspective that was a flaw in her analysis. I don't know if they are going to be using the same expert or the same type of expert in this -- in this case. Certainly we're not there yet. But the files themselves are not independently relevant to any of the claims, specifically because this is a case where the plaintiff is alleging various policies and practices to convict innocent people purposefully. And certainly if there is an open file, nobody has been charged.

THE COURT: Ms. Prossnitz, I wasn't sure how the open files are relevant to the issues in this case. So why don't you give me your take on that.

MS. PROSSNITZ: Yes, your Honor. So for our Monell theory about the city's -- we are alleging that the city has a widespread pattern and practice of suggestive lineup procedures. And so our expert focuses on the statistical anomalies in the city's lineup outcome, specifically that the city has -- the City of Chicago has a much higher rate than other police departments of there (unintelligible) where there are positive identifications.

And in relying on that comparison, our expert looks at a field study data set from other cities that includes open and closed homicide files. So in order to make that comparison, it is -- it is essential that our expert be able to either compare the open and closed homicide files that we have in Chicago to the field study data set or be able to say that the closed homicide files are representative, if the city would you agree to the stipulation.

THE COURT: So in closed homicide files there has been someone identified, correct?

MS. PROSSNITZ: Yes.

THE COURT: Because it is -- you know, there has been a suspect identified. In the open files, no suspect has been identified.

MS. PROSSNITZ: That's not always the case, your Honor, because we have -- we have cases where three of the four suspects have been identified but the fourth one is still at-large and so it is classified as an open homicide.

THE COURT: So in multiple actor cases, it could still be some of them identified, some not identified. And does your expert cull through and only look at those or just if there is a single suspect who has never been identified, does your expert analyze those cases?

MS. PROSSNITZ: I think our expert would analyze multiple universe of cases, your Honor.

THE COURT: What's the relevancy of the last group?

MS. PROSSNITZ: I think it is important for our expert even to say if there has been a lineup procedure where there wasn't a positive identification in the open files or if there was a positive identification and still the city ended up not moving for charges in that case.

THE COURT: All right.

MS. BARBER: Your Honor, so with the expert who has done this analysis in the past, so the several recent cases, she determined that she had an overabundance of identifications to work with in order to make her comparison to the field studies. Far more than she needed, which is part of her argument as to why --

THE COURT: Of closed files?

MS. BARBER: Correct.

THE COURT: Okay.

MS. BARBER: -- why her opinions were so strong in her view. Which we disagree with that.

In that case, the -- the open files don't add any additional value. There is no -- been no indication of why this expert cannot just use the closed files that have already been agreed to be used in this case.

And in the case where she did have open files, she didn't make -- she didn't care the difference between open and closed. It didn't make a difference to her in her analysis.

THE COURT: But she did analyze the closed file -- I mean, the open files?

MS. BARBER: Only in like -- only in the sense that it was a whole lump sum of (unintelligible). She didn't make a distinction between the open and closed in any way.

THE COURT: All right. I'm still trying to figure out why this would be relevant to the issues at hand. And what I gleaned from your argument and your pleading, Ms. Prossnitz, is that you really want to forestall the city from raising an argument of, well, you didn't do a thorough job because you didn't review the open files. Is that correct? Or am I -- that's what you are --

MS. PROSSNITZ: That's completely correct, your Honor. We don't want to be in a situation where the city is relying on the open files to make that argument when we haven't been given access to them.

MS. BARBER: And the argument from our side is we would be making that argument regardless. So we have made that argument when she had the open files. Like I said, she didn't care. She didn't make any distinction. That was one flaw in her analysis of many. So that argument is coming at her regardless.

The field studies themselves that she's comparing them to don't make a distinction between open and closed. So she's really never going to be, in our view, be able to make a true

apples-and-apples comparison.

THE COURT: There is a proportionality argument that you raise; is that correct? Why don't you deal with that.

MS. PROSSNITZ: Yes, your Honor. I think given that we have -- we have produced (unintelligible) the majority of these files already and that we're just focusing on a period of three years. For the open files, I think it is a narrow request. And the courts in this district have been clear that five years worth of production of homicide files has become a benchmark in the Northern District of Illinois.

THE COURT: But we have had other -- I mean, not every judge agrees with Judge Appenteng, right? There has been a variety of decisions made in this building on this issue; is that correct?

MS. PROSSNITZ: That's fair, your Honor, yes.

THE COURT: And I'm going to be on the side to not agree with Judge Appenteng. I don't believe that it is necessarily relevant. And then you can raise it on a Daubert motion with the district court judge if it comes to that if your concern or your fear of how the city's argument might be viewed by a trier or fact.

MS. PROSSNITZ: Okay.

THE COURT: All right. Anything else that we need to deal with?

MS. BARBER: No, your Honor. I just wanted to quickly

note that the -- my co-counsel for Guevara and the individual officers got confused on the order today, so that's why they weren't -- weren't here. So I just want to apologize on their behalf.

THE COURT: You argued it fine.

MS. BARBER: Yeah. They wouldn't have anything to add.

THE COURT: So no other person was necessary.

Anything else from the plaintiff's standpoint?

MS. PROSSNITZ: Yes, your Honor. One of our other requests in this motion was for the city to commit to producing the gang crime specialist CR files, the complaint register files.

THE COURT: Is that an issue ripe before me? Yes, I mean, have you finished discussing that and has there been an agreement that has been breached at this time?

MS. PROSSNITZ: We would just like the city to commit to a date certain of producing those files.

THE COURT: Well, have you talked to the city and asked for that date certain?

MS. PROSSNITZ: Yes, your Honor.

MS. BARBER: We -- so this is a long, long process --

THE COURT: So I don't want to deal with anything that is not quite ripe for my adjudication. The two sides can work as you have worked in other cases. The city can make whatever

representations it wants to. And if they don't abide by what they said that they would do, then you can come in on a motion.

MS. PROSSNITZ: Okay. Understood, your Honor.

THE COURT: But, you know, we don't want to do that. We want to work together towards resolution.

Anything else?

MS. BARBER: No, your Honor.

MS. PROSSNITZ: No, your Honor.

THE COURT: Okay. Thank you very much.

MS. BARBER: Thank you.

MS. PROSSNITZ: Thank you.

(Which concluded the proceedings.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitation of using a digital-recording system.

*/s/Pamela S. Warren* March 10, 2025
Official Court Reporter - Retired Date
United States District Court
Northern District of Illinois
Eastern Division